IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICKY PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:17-CV-1067-MAB |
| | ) |
| COLE BUCKLES and MARK SUMMERS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Plaintiff Ricky Patterson's Motion to Relieve Counsel of Duties (Doc. 72) and Motion to Withdraw Settlement Agreement (Doc. 73). For the reasons that follow, Plaintiff's Motion to Relieve Counsel (Doc. 72) is granted and his Motion to Withdraw Settlement Agreement (Doc. 73) is denied and the settlement agreement is enforced.

## BACKGROUND

In October 2019, the undersigned conducted a settlement conference with the parties but the case did not settle (Doc. 55). Plaintiff, through his recruited counsel, continued negotiating with Defendants, and in mid-November 2019, the parties informed the Court that they had settled this case, along with Patterson's other pending case: 17-cv-1311-SMY (Doc. 58). A 90-day order was entered on November 19, 2019 (Doc. 59). While the parties were finalizing the settlement agreement, they consented to a United

States Magistrate Judge conducting all further proceedings in this case, and District Judge Staci Yandle referred the case to the undersigned pursuant to 28 U.S.C. § 636(c) (Docs. 8, 44, 45). The entry of judgment was then postponed for another 90 days at Defendants' request (Doc. 69).

A short time later, Plaintiff filed a *pro se* motion to withdraw from the settlement agreement (Doc. 70). In his motion, Plaintiff claimed that he was unable to properly defend his claims in both of his cases because his "records/discovery" were destroyed when mice made a nest in his property box (Doc. 70). He claims defense counsel knew this and used it to "bully" him into settling both cases by "threatening plaintiff with sanctions/fines/financial penalties" in case 17-cv-1311-SMY if he did not accept the settlement offered to him in the instant case (Doc. 70). He further claims that he felt "extremely bullied by the magistrate judge" in case 17-cv-1311-SMY because she would not grant him extensions of time or order Defendants to resend him the discovery documents that had been destroyed by the mice (Doc. 70). Plaintiff claims that he was consequently "forced to settle [sic] these claims at the defendants convience [sic]" (Doc. 70). Plaintiff claims that after he agreed to the settlement, defense counsel continued to "bully" him by delaying his settlement payment for six months (Doc. 70).

Plaintiff's motion was stricken and he was told that, because he was represented by counsel, the Court would not accept any *pro se* filings from him other than a motion asking to fire his attorney (Doc. 71). A month later, he filed a motion to fire his attorney (Doc. 72) and resubmitted his motion to withdraw from the settlement (Doc. 73). In the motion to fire his attorney, Plaintiff indicates that during the time that defense counsel

was purportedly "stalling" the settlement, a grievance that he filed about the destruction of his legal materials was granted and prison officials "must secure [his] case files, which will restore key information [he] needs to surpass summary judgment in both cases" (Doc. 72). Plaintiff further indicates that he "has written counsel several times and even has his family call his office [but] the letters were returned and the calls have gone unreplied to" (Doc. 72).

Defendants filed a response to Plaintiff's motion to withdraw the settlement agreement, stating that the settlement agreement was fully executed, a payment voucher was created, and the parties are simply waiting for Plaintiff to be paid (Doc. 74).

## DISCUSSION

A plaintiff generally has the right to fire their attorney if they so choose. In this instance, Plaintiff indicates that he wants to fire his attorney because he has stopped communicating with Plaintiff (Doc. 72). However, the Court questions whether this is true given the timing of Plaintiff's motion and the complete lack of details regarding Plaintiff's purported efforts to contact his attorney. It seems that perhaps Plaintiff wants to fire his attorney so that he can challenge the settlement, which presumably his attorney would not agree to do. At any rate, this matter is on the verge of completion, at which time the Court would have terminated counsel's representation of Plaintiff anyway. Consequently, the Court will grant Plaintiff's motion to fire his attorney and consider Plaintiff's *pro se* motion to withdraw from the settlement.

"Whether the parties to a federal lawsuit have reached an enforceable settlement is a question governed by contract principles in the state where the court sits." *Brown v.*

*Cook Cty., Ill.*, 590 Fed. Appx. 639, 640 (7th Cir. 2015) (citing *Dillard v. Starcon Int'l Inc.,* 483 F.3d 502, 506 (7th Cir. 2007); *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002)). In Illinois, "[p]ublic policy . . . favors settlements and dictates that, absent fraud or duress, settlements should be final." *Pritchett v. Asbestos Claims Mgmt. Corp.* 773 N.E.2d 1277, 1285 (Ill. App. Ct. 2002) (citations omitted). *Accord Carlile v. Snap-on Tools*, 648 N.E.2d 317, 321 (Ill. App. Ct. 1995) ("Public policy favors the settlement of claims, and it is important that claims, once fairly resolved, not be resurrected.")

Here, it is undisputed that the parties reached a settlement. Plaintiff now wants to tear up the agreement, however, because he claims that defense counsel is intentionally stalling payment and the settlement agreement he reached and signed was essentially tainted by coercion or duress.

The Court is wholly unconvinced by Plaintiff's first argument. Payment of the settlement amount is entrusted to the Illinois Department of Central Management Services. Defense counsel is not responsible for payment and has no control over when payment is made. Furthermore, defense counsel sought to postpone the entry of judgment not to "bully" Plaintiff, but to ensure that he was paid before judgment was entered and the case was closed.

The Court is also wholly unconvinced by Plaintiff's argument that he was coerced into signing the settlement agreement. Plaintiff contends that he felt "bullied" by Magistrate Judge Reona Daly because after his documents were destroyed by mice, she would not give him any extensions of time or order Defendants to resend him the documents he needed. His contentions are belied by the record in that matter. The record

plainly demonstrates that Judge Daly gave Plaintiff multiple extensions (*see, e.g.,* SDIL case number 17-cv-1311-SMY, Docs. 47, 73, 75). Judge Daly also specifically instructed Plaintiff that if the documents he needed to respond to Defendants' motion for summary judgment were destroyed by the mice, he "should request additional copies of those documents as soon as possible" (*Id.* at Doc. 75).

As for Plaintiff's contention that he was bullied by defense counsel and threatened with financial penalties if he did not settle, the Court notes that Plaintiff was represented by counsel during all of the settlement negotiations. Counsel was presumably able to explain Defendants' position on settlement to Plaintiff and advise him on the pros and cons of settling. The fact that Plaintiff was in a difficult bargaining position, under financial pressure, or later gained access to new information is not enough to set aside the settlement agreement. *Baptist v. City of Kankakee*, 481 F.3d 485, 491 n.2 (7th Cir. 2007) Rather, Plaintiff must show by clear and convincing evidence "imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness[es] of another," such that "the person is deprived of the exercise of [their] free will." *Id.*; *Flynn v. Flynn*, 597 N.E.2d 709, 713 (Ill. App. Ct. 1992). Plaintiff's argument here falls well short of that. He describes nothing more than the typical puffing and posturing that occurs during settlement negotiations. Furthermore, entering into the settlement agreement was not Plaintiff's only option; he could have taken his chances by responding to Defendants' motion summary judgment. *See Baptist*, 481 F.3d at 491 n.2 ("[A] party asserting duress cannot prevail if he had an alternative to

entering into the agreement. The plaintiffs . . . had the option of taking their disparate impact claim to trial, and any claim of duress would necessarily fail.")

Accordingly, Plaintiff has failed to set forth a reason sufficient to set aside the settlement agreement and his *pro se* motion to withdraw the settlement agreement is denied.

## CONCLUSION

Plaintiff's Motion to Relieve Counsel of Duties (Doc. 72) is **GRANTED**. Attorneys David Grebel and Patrick Hamacher are **TERMINATED** as counsel of record for Plaintiff. On behalf of the entire Southern District of Illinois, the undersigned sincerely thanks Mr. Grebel and Mr. Hamacher for their time and service on this case.

Plaintiff's Motion to Withdraw Settlement Agreement (Doc. 73) is **DENIED** and the settlement agreement is **ENFORCED**.

In accordance with the Order entered on February 21, 2020, the Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: May 28, 2020**

                                            s/ Mark A. Beatty
                                            **MARK A. BEATTY**
                                            **United States Magistrate Judge**